*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADULT INTERNAL MEDICINE PRACTICE, LLC,

Plaintiff-Appellant,

v

GENERAL MEDICINE, PC, and GENERAL
MEDICINE OF ILLINOIS PHYSICIANS, PC,

Defendants-Appellees.

UNPUBLISHED
December 22, 2022

No. 359653
Oakland Circuit Court
LC No. 2020-184432-CB

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Dr. Charles Ampadu was required to maintain two Provider Transaction Access Numbers (PTANs) so that he, and plaintiff, could bill for the Medicare services he provided. The PTANs lapsed after the notice for their revalidation was sent to defendants. Plaintiff sued defendants for negligence and tortious interference with a business relationship when the PTANs were deactivated. The trial court granted defendants' motion for summary disposition. We affirm.

Dr. Ampadu was a co-owner and operator of plaintiff, for which he registered and maintained two PTANs for the services he provided under plaintiff's practice. He then entered into an agreement with defendants to provide medical services for patients who visited defendants' practice. Defendants submitted a form that allowed it to use Dr. Ampadu's PTAN in conjunction with plaintiff. Once this form was submitted, however, notices for Dr. Ampadu's PTAN revalidation were sent to defendants' address.

Defendants' office manager testified during her deposition that she assumed that Dr. Ampadu and plaintiff had also received the notices because the PTANs were registered to Dr. Ampadu. The PTANs were deactivated, however, after they were not revalidated, and plaintiff was unable to bill for the Medicare services that Dr. Ampadu performed for several months.

The trial court granted defendants summary disposition under MCR 2.116(C)(10), finding that there was no question of material fact that defendants did not owe plaintiff a legal duty and that there was no evidence that defendants knew that submitting a form to bill under Dr. Ampadu's PTAN would interfere with plaintiff's business.

Plaintiff now appeals.

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party. *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman*, 332 Mich App at 632.

Plaintiff first claims that the trial court erred because defendants' tortiously interfered with its business relationship.

> The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and a resultant damage to the plaintiff. [*Dalley v Dykema Gossett*, 287 Mich App 296, 323; 788 NW2d 679 (2010) (cleaned up).]

The parties, and the trial court, focused on the third element regarding whether defendants intentionally interfered with plaintiff's business relationship because there was no dispute that plaintiff had a business relationship involving the PTAN, defendants knew that plaintiff had that relationship, and that plaintiff's damages were that it could not bill for the services after deactivation of the PTANs.

"To fulfill the third element, intentional interference inducing or causing a breach of a business relationship, a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification." *Id*. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Laboratories v Blue Cross & Blue Shield of Mich (On Remand)*, 217 Mich App 687, 698-699; 552 NW2d 919 (1996).

Inherent in plaintiff's claim is that defendants initially submitted the PTAN assignment request form so that defendants could bill for services provided by Dr. Ampadu during his part-time employment with defendants. Thus, by plaintiff's own admission, defendants' assignment to Dr. Ampadu's PTAN would not constitute improper motive of interference with plaintiff's business relationship because defendants took those actions for the purpose of their legitimate business relationship with Dr. Ampadu.

Plaintiff further argues that defendants improperly interfered when they failed to notify plaintiff or Dr. Ampadu about the revalidation notices. Both parties agree that defendants' office manager completed the assignment request, and her uncontested testimony provided that she thought the notices were also sent to plaintiff and Dr. Ampadu. Plaintiff failed to establish that there was any question of fact on whether defendants acted intentionally and with malice. Thus, there is no genuine issue of material fact that defendants did not tortiously interfere with plaintiff's business relationship, and the trial court did not err in granting summary disposition on this issue.

Next, plaintiff argues that the trial court erred because defendants owed plaintiff a duty regarding the revalidation notices.

"In order to establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v Union-Commerce Ass'n*, 470 Mich 460, 463; 683 NW2d 587 (2004). "If the common law provides that a person owes a duty to another person, then that duty is usually to exercise ordinary care commensurate with the particular circumstance of the situation." *Payne*, 338 Mich App at 274.

Plaintiff argues that the harm was foreseeable and certain when considering that defendants received several notices, and this foreseeability created a duty. Plaintiff ignores, however, that the "mere fact that an event may be foreseeable is insufficient to impose a duty upon the defendant; rather, the question is whether, in light of all the relevant evidence, the defendant is under any obligation for the benefit of the particular plaintiff." *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 15; 596 NW2d 620 (1999). The question is whether defendants were under an obligation to inform plaintiff of those notices.

Dr. Ampadu was the individual who was in contract with defendants, not plaintiff. The PTANs were registered by Dr. Ampadu, for his benefit in billing for the Medicare services that he provided. Plaintiff required Dr. Ampadu to maintain PTAN validation so that it could bill for his services, but Dr. Ampadu signed a form that allowed defendants to be assigned to that PTAN as well. Simply put, the relationship between plaintiff and defendants is tertiary. Even assuming that defendants had an obligation to inform Dr. Ampadu about the notices regarding the PTANs that he registered and assigned to defendants, defendants did not have an obligation to plaintiff in this case when plaintiff had not contracted with defendants and plaintiff was not in a relationship with defendants.

Furthermore, plaintiff has not established that defendants are the proximate cause of the injuries when considering that Dr. Ampadu registered the PTANs and had regularly revalidated the PTANs. It remained Dr. Ampadu's responsibility to revalidate the PTAN, regardless of whether he received the notifications.

Affirmed. Defendants, as the prevailing parties, may tax costs under MCR 7.219.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford